FURST ET AL. *v.* MILLS ET AL.

[No. 14,786. Filed February 21, 1934.]

*Vesey, Shoaff & Hoffmann, Ray E. McCall, Robert Y. Keegan,* and *John D. Shoaff,* for appellants.

*Smith & Parrish,* for appellees.

SMITH, J.—Appellants sued appellees for moneys due under a certain written agreement for goods sold to appellee Harvey Mills and purchased by him under said agreement; the other appellees, Catherine Mills and Charles Feichter, being guarantors upon said written agreement. Judgment was prayed for in the sum of $1,268.05 with interest from April 6, 1929, at six per cent.

The appellee Harvey Mills filed an answer in two paragraphs: (1) General denial; (2) an affirmative answer alleging that, after he had signed the written agreement sued upon and had begun purchasing and selling appellants' goods, appellants requested him to sell the goods on credit and informed the appellee that, if at any time he was unable to collect for said sales, and was required to suffer a loss on his commissions, or was unable to collect for said goods so sold, appellants would stand the loss, if any, to the amount of $1,268.05. Then follows an allegation that appellee Harvey Mills lost on account of selling said goods on credit, and does not owe appellants any money by reason of their agreement made subsequent to the written contract.

Appellee Charles Feichter filed an answer in general denial, and appellee Catherine Mills filed a verified answer of general denial.

The cause was submitted to the court and a jury upon these issues, and a verdict was returned for appellants in the sum of $100. Appellants seasonably filed their motion for new trial which was overruled, this ruling

being the only error assigned for reversal. Among the causes set forth in the motion for new trial are: (5) the verdict of the jury is not sustained by sufficient evidence; (6) the verdict of the jury is contrary to law. From the conclusion that we have reached in this case, these are the only grounds in the motion for new trial that need be considered.

There is no dispute as to the amount owing by appellees to appellants. The evidence shows that this amount was $1,268.05 to which could be added interest at six per cent from April, 1929.

The jury returned a verdict for appellants in the sum of $100. In order for this verdict to stand, it must be sustained by the proof bearing upon the second paragraph of answer by appellee Harvey Mills. The facts most favorable to appellees upon this subject are that appellee Harvey Mills entered into a written contract, dated January 26, 1926, with the appellants by which he agreed to purchase from them their line of goods, such as spices, soaps, food products, etc., at a price to be charged therefor; that a clause in the contract provided that appellants also agreed to give appellee Harvey Mills advice and suggestions on the methods of the selling of their products, but "it is expressly agreed that nothing contained in such advice and suggestions shall be binding upon the dealer (Harvey Mills) nor shall be construed as in any way altering or modifying the terms of this agreement." The evidence also shows that appellee Mills entered into this written contract which was brought to him by a man named Dean, a field man for appellants; that he talked with Dean, and he (Dean) "fixed" a letter for him to send to appellants upon the subject of acting as a dealer; that Mills made no arrangements with appellants about the selling of any articles other than the written agreement; that appellee signed the contract and, after securing the guarantors there; i

and the acceptance of it by the appellants, he began work on February 22, 1926; that for about three years he was engaged in this business of selling appellants' goods, and made weekly reports of his sales and sent them "their per cent of the commission"; that, for the first month or so after he started work, he sold most of the goods for cash, but, on about the fifth of March, 1926, said Dean, who was the field man for appellants, came and talked to him about credit sales, and told him to go ahead and put the goods out on time, that the goods belonged to the company until the money was collected therefor, and, when he had collected, he should send half of it in; that, after being told this, Mills put out part of the goods on time.

The testimony on behalf of appellee further shows that a Mr. Williamson, who later became the field man for appellants following Mr. Dean, sometime in the summer of 1926, told Mr. Mills the same thing, to go ahead and put the goods out on time, that they belonged to the company until he, Mills, collected the money; that the thing to do would be to put the goods out on time, so that he would have collections coming in.

Upon cross-examination, Mr. Harvey Mills testified that it was about four to six weeks after he had started selling when he began giving very much credit; that Dean and Williamson were what was known as field men for appellants; that Dean brought the printed contract to appellee Mills, and solicited him as a dealer for appellants, and left the written contract with him; that Mills signed and caused his guarantors to sign the same, and later delivered it to Dean, who sent the contract to appellants at the home office at Freeport, Illinois, for their approval. The evidence also shows that the terms of this written contract were made by the appellants at their home office, and not by Dean or Williamson, field men. The evidence of appellees

further shows that he continued to put goods out on time until he quit.

Quoting from appellants' brief, from the recital of the evidence, appellee Harvey Mills testified:

"Shortly after I started business, I talked with Dean one night and he said to go ahead and put goods out on time and that the goods were the companys until it was collected for. As I collected the money I sent money to Furst and Thomas. At the end, when I quit about the middle of December, 1928, I didn't succeed in collecting for all that I had sold. There were some trips before this date when I did no selling, only trips for collections. Afterwards I tried collecting, up until March of 1929, about twice a month but I never collected as much as five cents. I cannot tell the amount of goods I put out on credit as part of it was cash and part credit. Practically all that I sold on credit was sold after I talked with Dean, but I don't know the amount. I would imagine $2,000.00. I don't know how many goods I sold in all or the value of them as I never kept tab but I expect $3,000.00 or something like that, but I wouldn't want to say definitely."

The verdict of the jury is not sustained by sufficient evidence. In the first place, there is not sufficient evidence to show that there was a subsequent oral agreement between appellants and appellee Harvey Mills, as set forth in his second paragraph of answer. We have set forth above the substance of all of the testimony bearing upon that subject, and it fails to show that the appellants agreed to credit appellee for any loss upon accounts he was unable to collect for goods which he sold on credit. The most that this evidence does disclose is that Dean, a field man for appellants, and later Williamson told Mills to go ahead and put the goods out on time, that the goods belonged to the company until the money was collected, and when collected to send half of it in. This is the full effect that could be given to the testimony of appellee.

The written contract provided that Mills was to purchase these goods from appellants, and pay them the regular wholesale price in reasonable installments out of the proceeds of his business until his account was balanced; that appellants were to advise the appellee upon sales and methods of sale, but that nothing contained in such advice or suggestions should be construed as altering or modifying the terms of the written agreement.

Even if the evidence of appellee were sufficient to show the making of the subsequent oral agreement, as alleged in the second paragraph of answer, still, it is incumbent upon appellee to show that the person or persons with whom he made this agreement not only represented appellants, but had the authority to enter into the same. There is no evidence to show that Dean or Williamson, field men for appellants, had the authority to enter into any such agreement and bind appellants, their principal. Such authority could not be implied from the acts or conduct of either of these field men, nor is there any express authority shown by the evidence.

Moreover, this verdict is not sustained by sufficient evidence in that the second paragraph of answer of Harvey Mills is based upon the proposition that he should be credited for goods purchased from appellants with all uncollectible accounts for goods which he had put out on credit. Appellee Mills further alleged that the amount of these accounts was $1,268.05, which was the exact amount due appellants for goods sold to him under the written contract. Nowhere in the evidence is there any attempt to prove the amount owed on accounts for goods sold on credit which appellee Mills was unable to collect, nor the amount he sold on credit. We have set out the evidence

of appellee Harvey Mills upon this subject, as shown by appellants' brief. The most that he said was:

"Practically all that I sold on credit was sold after I talked with Dean, *but I don't know the amount*. I would imagine $2,000.00. I don't know how many goods I sold in all, or the value of them. I never kept tab, but I expect $3,000.00 or something like that, but I do not want to say definitely."

This is all the testimony that was offered as to how much credit appellee was entitled to for goods sold on credit for which he was unable to collect. He says that he does not know the amount he sold on credit.

The jury should not base their verdict upon his guess or conjecture, but upon the facts proved. The verdict of the jury is not sustained by sufficient evidence and is contrary to law.

As the judgment must be reversed for these reasons, it is not necessary to discuss any of the other grounds set forth in appellants' motion for new trial.

Judgment of the lower court is reversed with directions to sustain appellants' motion for new trial.